IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No. 10-cv-00692-WYD-MJW

JEFFREY A. BRODE,

    Plaintiff,

v.

CHASE HOME FINANCE, LLC;
US BANK AS TRUSTEE FOR WMALT SERIES 2007 OA3 TRUST;
PLAZA HOME MORTGAGE, INC.;
WASHINGTON MUTUAL, INC.;
DOES 1 THROUGH 50;
ARONOWITZ AND MECKLENBURG, LLP;
SUSAN J. HENDRICK, ESQ., ATTY CO REG. NO. 33196,

    Defendants.

**ORDER**

I.    <u>INTRODUCTION</u>

THIS MATTER came before the Court on a hearing on Tuesday, May 11, 2010, on the Motion to Dismiss filed by Defendants Aronowitz and Mecklenburg ["A&M"] and Susan Hendrick ["Hendrick"] and Plaintiff's Motions for Preliminary Injunction. For the reasons stated on the record at the hearing and in this Order, the Motion to Dismiss is granted in part and denied in part. The Motions for Preliminary Injunction are denied, and the Temporary Restraining Order issued on March 25, 2010, is now expired.

II.    <u>BACKGROUND</u>

This case involves a construction loan that Plaintiff received in December 2006 with the assistance of Plaza Home Mortgage ["Plaza"]. He claims at the closing that he

was not given a "Notice of Right to Cancel" and the loan was fraudulently charged to a "second home" without his knowledge.  He further claims that on or about October 29, 2009, he delivered a Notice of Rescission invoking his rights under the Truth in Lending Act ["TILA"], 15 U.S.C. § 1635 and Regulation Z, 12 C.F.R. §§ 226.23 and 226.15.  He also claims that Defendants ignored this notice and are unlawfully attempting to foreclose Plaintiff's home and to obtain a non-judicial foreclosure with a void security interest.  Plaintiff has alleged violations of the TILA, the Real Estate and Settlement Procedures Act, Fair Debt Collection Practices Act, Fair Credit Reporting Act, fraud and other claims and seeks rescission of the mortgage and monetary damages.

Plaintiff initially filed an *ex parte* Motion for Temporary Restraining Order ("TRO") on March 25, 2010, which was heard on that date by the Court.  Plaintiff sought to enjoin Defendants from finalizing a public sale of his home which had occurred the day before, on March 24, 2010.  This sale had been authorized pursuant to Colo. R. Civ. P. 120(d) and a bid from the lender was accepted on the home.  The sale had not yet been approved by the state court as required by Rule 120(g).

Plaintiff's *ex parte* motion for a TRO was granted at the hearing, and a TRO was issued on that same date.  It enjoined Defendants "from taking any further action with respect to the sale or finalizing the sale of Defendant's residence located at 1135 Hernage Creek Road, Eagle, Colorado 81631" and "from seeking or obtaining an order from the state court approving the sale pursuant to Colo. R. Civ. P. 120."  The TRO was set to expire on the date of the next hearing on April 8, 2010, 14 days after its issuance in accordance with Fed. R. Civ. P. 65(b)(2).

On March 31, 2010, Plaintiff filed a *pro se* Motion for Preliminary Injunction seeking to enjoin Defendants "from proceeding with a Public Trustee sale of Plaintiff's home . . . and to prevent Defendants from interfering with Plaintiff's possession of his residence" until this case has been decided. Pursuant to agreement of the parties and the Court at a status conference on April 8, 2010, the hearing was reset to May 11, 2010, and the TRO was extended through that date. Also, by April 16, 2010, Plaintiff was allowed to supplement the preliminary injunction motion and Defendants were directed to file any motions to dismiss related to improper service or lack of jurisdiction. Plaintiff then obtained counsel who filed an Amended Motion for Preliminary Injunction.

Defendants A&M and Hendrick filed a Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(B)(1), (2), (4), and (6) and Brief in Support Thereof ["Motion to Dismiss"] on April 16, 2010. The motion seeks dismissal based on improper service of process, lack of subject matter jurisdiction, and a bar of the state foreclosure decision under the *Rooker-Feldman* doctrine. Plaintiff filed a response on April 30, 2010.

III. FACTS

Plaintiff purchased the Property at issue, located at 1135 Hernage Creek Rd, Eagle, CO 81631, and constructed a single family residence. Plaintiff allegedly took residence with his family at the Property in late May 2006. He is the President of Alpine Construction and Development, Inc. ["Alpine"] and is a mortgage broker and realtor.

In October 2006, Plaintiff applied for a mortgage loan with Plaza in the principal amount of $999,000 to refinance an existing mortgage loan on the Property and to obtain approximately $202,000 in cash. (Compl., ¶ 20.) He submitted a Uniform

Residential Loan Application ("Initial Application") indicating that the Property "will be" Plaintiff's "primary residence". (Chase Home Finance, LLC and U.S. Bank's Resp. in Opp'n. to Pl.'s Am. Mot. for Preliminary. Inj. ["Chase's Resp. to Mot. for Inj."], Ex. A-1.)

During the underwriting process, Plaza questioned the characterization of Plaintiff's Property as his primary residence. (Compl., ¶ 23.) Plaintiff delivered a Letter of Explanation as to the concerns and attached documentation of Plaintiff's son's enrollment into the new school district effective June 2006. (*Id.* and Ex. B.) Plaza ultimately approved Plaintiff for a mortgage loan in the principal amount of $999,000 ("the Loan") and scheduled the Loan closing for December 13, 2004. (*Id.*, ¶ 24.) Plaintiff asserts that the Loan was approved for the Property as his primary residence.

The Loan closing occurred on December 13, 2006. At the closing, Plaintiff executed a final Uniform Residential Loan Application, dated December 13, 2006 [the "Final Application"]. The Final Application indicated that the Property "will be" a "secondary residence" and Plaintiff's "primary residence" is located at 681 Amherst Rd. Gypsum, Colorado 81837. (Chase's Resp. to Mot. for Inj., Ex. A-2; *see also* Ex. F to Compl.) Above Plaintiff's signature on the Final Application, Plaintiff represented to Plaza and its successors and assigns that "the information provided in this application is true and correct as of the date set forth opposite my signature [December 13, 2006]" and that "the property will be occupied as indicated in this application." (*Id.*, p. 4.)

Also at the closing, Plaintiff executed an Occupancy Statement wherein he declared, "under penalty of perjury", that he will occupy the Property as a "second residence." (Chase's Resp. to Mot. for Inj., Ex. A-3.) Above Plaintiff's signature on the

Occupancy Statement, Plaintiff certified "under penalty of Chapter 18, U.S.C. 1010 to 1014 that the statement contained herein is true and correct."

Plaintiff also executed an Adjustable Rate Note in the principal amount of $999,000 in favor of Plaza (the "Note") (Chase's Resp. to Mot. for Inj., Ex. A-4), and executed a Deed of Trust encumbering the Property in favor of Plaza. (*Id.*, Ex. A-5.) On Page 2 of the Deed of Trust, under the definition of "Riders", it states that Plaintiff "will" execute a "Second Home Rider" in connection with the Deed of Trust. (*Id.*)

The Second Home Rider was executed at the closing, which deleted Section 6 of the Deed of Trust and replaced it with the following pertinent language "Borrower shall occupy, and shall only use, the Property as Borrower's second home." The Second Home Rider is attached to, and incorporated in, the Deed of Trust. (*Id.*) Above Plaintiff's signature on the Second Home Rider, Plaintiff acknowledged his acceptance and agreement "to the terms and covenants contained in this Second Home Rider."

Plaintiff asserts that no additional disclosures were given prior to consummation of the Loan at the closing other than the ones given at the time of application. Plaintiff and his spouse signed the transaction as delivered by Plaza. He alleges that they were never informed of any changes in the terms, including a change regarding the status of his Property from a "primary residence" to that of a "secondary residence".

Further, Plaintiff states that he was never informed of a pre-existing relationship with Washington Mutual Bank ["WaMu"] or that the Loan was destined to be converted into a securitization transaction. Plaintiff also asserts that he was not given a Notice of Right to Cancel or a copy of the documents from the closing and, due to the holiday

season, asserts that he never followed up. He argues that he relied upon Defendants' duty of good faith and fair dealing and had no reason to question the transaction.

On February 27, 2009, Plaintiff contacted WaMu to inquire about a modification of the Note and Deed of Trust to a fixed rate loan. (Compl., ¶ 44.) He was notified on or about August 3, 2009, that his application for modification had been denied because the Loan was on a second home. (*Id.*, ¶ 49.) Plaintiff asserts that it was upon Defendants' denial of the modification to the Loan and his receipt of documents pertaining to the Loan that he learned that the Loan had been fraudulently changed to reflect his home as a second home. (*Id.*, ¶¶ 50-52.) Plaintiff argues that this directly contradicted what he had applied for on the loan application.

On October 29, 2009, Plaintiff delivered a Notice of Rescission to Defendants which he contends effectively cancelled the Loan. (Compl., Ex. I.) Plaintiff asserts that Defendants never respond to his Notice of Rescission or Notice of Default (Compl., ¶ 62), and Defendants have produced no evidence refuting this. Plaintiff also asserts that Defendants have only responded to one of Plaintiff's Qualified Written Requests, and have refused to answer the majority of concerns as to the Loan.

On or about October 28, 2009, A&M, as attorney for U.S. Bank, National Association as Trustee for WaMu Mortgage Pass Through-Certificate for WMALT Series 2007-OA3 Trust ["Holder"], commenced foreclosure proceedings with respect to the Property owned by Plaintiff by filing a *Notice of Election and Demand* with the Eagle County Public Trustee. (Mot. to Dismiss, Ex. 1). U.S. Bank is purportedly the current holder of the Note and Deed of Trust. (Chase's Resp. to Mot. for Inj. at 7.)

On December 11, 2009, A&M filed a *Verified Motion for Order Authorizing Sale Pursuant to C.R.C.P. 120* ["Rule 120 Motion"] with the District Court of Eagle County, Colorado, Case No. 2009 CV 841, on behalf of Holder. (Mot. to Dismiss, Ex. 2.) Plaintiff appeared and opposed the Verified Motion on the basis of standing, including lack of standing because Plaintiff had rescinded the transaction. (*Id.*, Ex. 3, ¶ 5.) The state court did not hear the rescission issue. Indeed, it was argued in U.S. Bank's response to Plaintiff's motion to dismiss filed in state court that "allegations of violations of the Truth in Lending Act are outside the limited scope of a C.R.C.P. 120 proceeding and may not be considered by this Court. Respondents must file a separate legal action in a court of competent jurisdiction." (Pl.'s Resp. to Mot. to Dismiss, Ex. B.) The state court judge agreed, finding that the "issue of rescission is one of Federal Law; . . . it is not before this Court. (*Id.*, Ex. A.)

On February 22, 2010, the Eagle County District Court issued an Order Authorizing Sale. (Mot. to Dismiss, Ex. 4, Ex. 2 at transaction no. 29547409.) On March 24, 2010, the Eagle County Public Trustee conducted the foreclosure sale of the Property and the Property was sold to U.S. Bank, the highest bid for the Property. On March 25, 2010, one day after the Property was sold, the Public Trustee issued the Certificate of Purchase vesting title in the Property to U.S. Bank. (Chase's Resp. to Mot. for Inj., Ex. A-7.) Also on March 25, 2010, Plaintiff commenced this action.

I now turn to the merits of the motion to dismiss and the motion for preliminary injunction. I first address the motion to dismiss as it asserts a lack of jurisdiction by this Court over the action.

IV. ANALYSIS

A. Motion to Dismiss

Defendants A&M and Hendrick move to dismiss pursuant to Rules 12(b)(1), (2), (4), and (6). They contend that service of process was defective and that the Court lacks subject matter jurisdiction because diversity jurisdiction does not exist. It is also argued that there is a lack of federal question jurisdiction because Plaintiff fails to state a cognizable claim under federal law. Finally, Defendants argue that the *Rooker-Feldman* doctrine prohibits the exercise of jurisdiction relating to claims that impact the state court proceeding determining that foreclosure was justified.

Turning to my analysis, the motion to dismiss is first denied as to the assertion about improper service as this argument is premature. While Plaintiff conceded at the hearing that service had not yet been effected on Hendrick and A&M, the time period for service had not yet run and I found at the hearing that Plaintiff still had time to effect service.

I also deny the motion to dismiss as to an alleged lack of jurisdiction. First, while Plaintiff acknowledges that the Court lacks diversity jurisdiction (as Plaintiff and Defendants A&M and Hendrick are all Colorado citizens), I find that the Complaint raises federal questions such that jurisdiction is proper pursuant to 28 U.S.C. § 1331. Federal statutes form the core of several of Plaintiff's causes of action. These include Plaintiff's claims under the TILA, the Fair Debt Collection Practices Act, the Real Estate Settlement Procedures Act, and the Fair Credit Reporting Act. To the extent

Defendants argue that Plaintiff's claims fail to state a claim for relief under Fed. R. Civ. P. 12(b)(6), this is not at issue in the current motion and will not be resolved herein.

I now turn to the *Rooker-Feldman* doctrine. This doctrine is a jurisdictional prohibition based on 28 U.S.C. § 1257 which holds that federal review of state court judgments may be obtained only in the United States Supreme Court. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). The *Rooker-Feldman* doctrine applies to bar "a party losing in state court . . . from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. DeGrandy*, 512 U.S. 997, 1005-06 (1994). In other words, it applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

In the case at hand, there clearly was a state court proceeding—the hearing and foreclosure sale authorized under Rule 120 of the Colorado Rules of Civil Procedure which occurred in Eagle County District Court. The issue is whether this provides a basis to preclude Plaintiff's federal claims under the *Rooker-Feldman* doctrine. I first note that any claims for statutory damages under the TILA and other statutes are not foreclosed, as they do not in any way seek to undo or even impact the state court proceeding involving the foreclosure. *See Rohr v. Home Loans Corp.*, No. 04-cv-01594-REB-BNB, 2005 WL 2027684, at *3 (D. Colo. 2005, Judge Blackburn); *Lee v.*

*Imperial Lending, LLC*, No. 06-cv-02388-ZLW-BNB, 2007 WL 2572267, at *4 (D. Colo. 2007, Judge Weinsheink). Thus, the motion to dismiss is denied on this issue.

I also deny the motion to dismiss as to the argument that the *Rooker-Feldman* doctrine bars Plaintiff's rescission claim under the TILA. Defendants correctly note that other judges in this court have held that claims for rescission of a mortgage loan under the TILA are barred by *Rooker-Feldman* even though, as in this case, the rescission claim was not before the state court. *Rohr*, 2005 WL 2027684, at *3 (dismissing rescission claim because it was inextricably intertwined with the state court judgment—"[t]he effect of the state court judgment was to foreclose the lien of the deed of trust on the property. . . and rescission of the mortgage loan would effectively undo the state court judgment"); *Morrow v. Countrywide Home Loans, Inc.*, No. 06-cv-00272, 2006 WL 1659181, at *2-3 (D. Colo. 2006, Judge Babcock) (following *Rohr* and reaching same conclusion); *Lee*, 2007 WL 2572267, at *3-4 (same).

However, I find that those cases are distinguishable. In all of those cases the state court had issued the final approval of the Public Trustee's sale, the final step in the Rule 120 foreclosure process which leads to the state court judgment or the equivalent thereof. Colo. R. Civ. P. 120(g). Prior to such approval, Rule 120(d) specifically states that the granting of a motion for order authorizing the sale "shall be without prejudice to the right of any person aggrieved to seek injunctive or other relief in any court of competent jurisdiction." *Id.* This makes sense as the scope of a Rule 120 hearing is generally limited to whether a default occurred and does not encompass federal claims, as acknowledged by the state court judge.

If the state court had actually approved the sale before this suit was commenced, *i.e.*, issued the final order in the foreclosure process, I agree with Defendants that Plaintiff's rescission claim would be barred by the *Rooker-Feldman* doctrine because it essentially would seek to undo that order, as set forth in *Rohr* and the other cases relief on by Defendants. However, Defendants acknowledged at the hearing that the state court approval has not yet occurred. Under these circumstances, I find that the action at this stage of the litigation is not barred by *Rooker-Feldman* since it would not be undoing a state court judgment or final order.

I also note that the Colorado statutes specifically provide a procedure for the Public Trustee to set aside a sale after a court has issued an order to that effect. Colo. Rev. Stat. § 38-38-109(2)(d). If there is an injunction or court order regarding that event, the Public Trustee must take no action regarding the sale (*i.e.*, completing the sale) and must post notice that the sale has been enjoined or set aside. *Id.*, § 38-38-109(2)(b). If the sale is in violation of a court order, "then the evidence of debt, deed or trust, or other lien being foreclosed shall immediately be deemed reinstated, and the deed of trust or other lien shall have the same priority as if the sale had not occurred." *Id.*, § 38-38-109(2)(c)(I). Thus, there is a provision in the Colorado statutes which provides that a foreclosure sale can be set aside by court order, which I find supports my conclusion.

Finally, the Supreme Court has made clear that *Rooker-Feldman* does not bar parallel litigation concerning the same matter in state court and federal court. *Exxon*

*Mobil Corp.*, 544 U.S. at 292. This also supports my conclusion that the *Rooker-Feldman* doctrine does not bar the rescission claim.

I grant the motion to dismiss, however, to the extent it asserts that Plaintiff's claim that U.S. Bank or the other Defendants proceeded with an unlawful foreclosure because they lacked a valid security interest. I find that such a claim is barred by the *Rooker-Feldman* doctrine. That claim was directly at issue in the state court proceeding as part of the determination of whether a default occurred. Indeed, Plaintiff put this issue before the state court in his Motion to Dismiss Foreclosure Action for Lack of Standing (Mot. to Dismiss, Ex. 3), which the state court denied. This Court would essentially be acting as an appellate court if it were to reconsider that issue in this case.

B.  Motions for Preliminary Injunction

Plaintiff requests a preliminary injunction enjoining Defendants from pursuing non-judicial foreclosure, including the Trustee sale, and the perfection of such wrongful action. He asserts that Defendants have violated the disclosure requirements of the TILA, his rescission of the loan at issue was effective, and Defendants' security interest is void pursuant to 15 U.S.C. § 1635(f). Accordingly, Plaintiff argues that Defendants have no right to proceed with the foreclosure action.

Plaintiff also argues that he has established irreparable injury and the other factors required for injunctive relief because without issuance of the injunction, he will lose his family home and may not be able to exercise his right to rescission under TILA since the foreclosure sale will be finalized and the home may be sold to a third party.

He asks that the foreclosure sale be enjoined to preserve the status quo pending adjudication of the merits.

1. Standard for Issuance of a Preliminary Injunction

A preliminary injunction is an extraordinary remedy; it is the exception rather than the rule. *Gen. Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007). The right to relief for such an injunction "must be clear and unequivocal." *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1256 (10th Cir. 2003). The primary purpose of a preliminary injunction is to preserve the status quo pending a final determination of the parties' rights. *Otero Savings and Loan Ass'n v. Fed. Reserve Bank of Kansas City, Mo.*, 665 F.2d 275, 277 (10th Cir. 1981).

"To obtain a preliminary injunction, the movant must show: (1) a substantial likelihood of success on the merits; (2) irreparable harm to the movant if the injunction is denied; (3) the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest." *Urban Gorilla*, 500 F.3d at 1226. "'If the plaintiff can establish that the latter three requirements tip strongly in his favor, the test is modified, and the plaintiff may meet the requirement for showing success on the merits by showing that questions going to the merits are so serious, substantial, difficult and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation.'" *Flowers*, 321 F.3d at 1255-56 (quotation omitted).

However, "when a preliminary injunction would alter the status quo, . . . the movant bears a heightened burden and 'must make a strong showing both with regard

to the likelihood of success on the merits and with regard to the balance of harms.'" *Urban Gorilla*, 500 F.3d at 1226 (quotation omitted). The movant must meet this heightened burden as to any of the disfavored categories of preliminary injunctions, including injunctions that alter the status quo, injunctions that are mandatory as opposed to prohibitory, or injunctions that afford the movant substantially all of the relief he may recover at the conclusion of a full trial on the merits. *O'Centro Espirita Beneficiente Uniao de Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004). As to those injunctions, courts must more closely scrutinize the injunction "to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." Movants seeking such an injunction are not entitled to rely on the modified-likelihood-of-success-on-the-merits standard. *Id.* at 976.

I find in this case that the heightened standard does not apply. First, Plaintiff seeks a prohibitory rather than a mandatory injunction, as he seeks to prohibit the final approval of the sale by the state court. Further, I find that he is not seeking to alter the status quo but to preserve the status quo. This is because Plaintiff is not seeking to undo the foreclosure sale at this juncture—he simply seeks an order prohibiting Defendants from finalizing the sale until the merits of the rescission claim are decided.

      2.    <u>Whether Plaintiff Has Shown that Injunctive Relief Should Be Granted</u>

As to the merits of Plaintiff's claim, TILA and Regulation Z contain detailed disclosure requirements for consumer loans. *See* 15 U.S.C. § 1635(a); *Semar v. Platte Valley Fed. Savings & Loan Ass'n.*, 791 F.2d 699, 703-04 (9th Cir. 1986). A lender's

violation of TILA allows the borrower to rescind a consumer loan secured by the borrower's primary dwelling. 15 U.S.C. § 1635(a).

15 U.S.C. § 1635(b) provides as to rescission:

> When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. . . .

*Id.*

Under 12 C.F.R. § 226.23(a)(3), a person whose loan is subject to TILA's requirements may rescind the transaction until midnight of the third business day following consummation, delivery of the required notice to rescind, or delivery of all material disclosures, whichever occurred last. Further, "if the required notice or material disclosures are not delivered, the right to rescind shall expire three years after consummation [of the loan]" *Id.*; *see also* 15 U.S.C. § 1635(f). Thus, if the material disclosures were not delivered initially when the loan was closed, the right to rescind is extended for three years. *Id.*; 12 C.F.R. § 226.15.

I find that Plaintiff's request for injunctive relief must be denied because I find that he has not shown a likelihood of success on the merits as to his rescission claim under TILA, even under the relaxed standard. That is because the final loan documents

-15-

executed at the closing on December 13, 2006, represented, under penalty of perjury, that the Property will be occupied as a secondary residence, not a primary residence. These documents included the final Loan Application, the Occupancy Statement, the Deed of Trust and the Second Home Rider. Plaintiff's primary residence was stated to be at a different location—681 Amherst Rd., Gypsum, Colorado. TILA's right of rescission only applies to mortgage loans secured by the borrower's principal residence. 15 U.S.C. 1635(a); *see also* 12 C.F.R. 226.23 (a)(1)); 12 C.F.R. § 226.2. A transaction secured by a secondary home is not rescindable, even if the consumer intends to reside there in the future. *Id.*; *see also Whitby v. Lime Fin. Services Ltd.*, No. 09-cv-01565-PAB, 2009 WL 4016634 (D. Colo. 2009) (mortgagor has no TILA rescission rights if the loan does not secure his "primary residence").

I agree with Defendants that it is implausible that Plaintiff, the president of a real estate development company as well as a mortgage broker and realtor would not notice at the loan closing three separate representations in three separate documents (under penalty of perjury) that the property was a second home. Further, under Colorado law, a person is generally presumed to know the contents of any document he signs. *See People v. Madison*, 176 P.3d 793, 795 (Colo. Ct. App. 2007). I find that Plaintiff has not overcome that presumption for purposes of the preliminary injunction motion. Given that Plaintiff is in the real estate business, the omission of a right to cure should also have been apparent.

Plaintiff tries to avoid the consequences of these loan documents by arguing that he is unable to determine whether the documents are authentic and by asserting fraud

-16-

by the lender. He asserts in that regard that he applied for and was approved for a loan on the Property as his primary residence and was never told that the loan was later changed to represent his Property as a secondary residence. His motions for a preliminary injunction seek discovery on these issue. I find that Plaintiff's mere conjecture about fraud is not enough to show that he is entitled to relief on the merits. As Defendants assert, these facts fall far short of "showing that questions going to the merits are so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation." *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1157 (10th Cir. 2001).[1]

I also note that even assuming Plaintiff somehow possessed rescission rights under TILA, any right of rescission was arguably extinguished by the foreclosure sale. *See* 15 U.S.C. 1635(f) ("An obligor's right of rescission shall expire three years after the date of consummation of the transaction or *upon the sale of the property*, whichever occurs first . . .") (emphasis added); 12 C.F.R. 226.23(a)(3) (a borrower's "right to rescind shall expire . . . upon sale of the property"); *Mayhew v. Cherry Creek Mortgage Co., Inc.*, Case No. 09-cv-00219-PAB-CBS, 2010 WL 935674, at *10 (D. Colo. Mar. 10, 2010) ("The sale or transfer of a consumer's interest in property terminates the consumer's right to rescind."). This also supports my finding that Plaintiff cannot prove a substantial likelihood of success on his TILA rescission claim.

---

[1] As to the discovery request, Plaintiff was informed at the hearing that such requests need to be made through the filing of a motion.

Since I find that plaintiff has not shown a likelihood of success on the merits, even under the modified standard, I need not consider the other factors required for issuance of injunctive relief. Plaintiff's motions for a preliminary injunction are denied.

I also reject Plaintiff's argument that the unilateral act of sending the Notice of Rescission on October 29, 2009, automatically voided the loan. As noted by the Ninth Circuit:

> If [the Bank] had acquiesced in Tampon's notice of rescission, then the transaction would have been rescinded automatically, thereby causing the security interest to become void and triggering the sequence of events laid out in subsections (d)(2) and (d)(3). But here, [the Bank] contested the notice and produced evidence sufficient to create a triable issue of fact about compliance with TILA's disclosure requirements. In these circumstances, it cannot be that the security interest vanishes immediately upon the giving of notice. Otherwise, a borrower could get out from under a secured loan simply by *claiming* TILA violations, whether or not the lender had actually committed any. Rather, under the statute and the regulation, the security interest "becomes void" only when the consumer "rescinds" the transaction. In a contested case, this happens when the right to rescind is determined in the borrower's favor.

*Yamamoto v. Bank of New York,* 329 F.3d 1167, 1172 (9th Cir.2003).

Similarly, the First Circuit has stated that "[n]either the statute nor the regulation establishes that a borrower's mere assertion of the right of rescission has the automatic effect of voiding the contract." *Large v. Conseco Finance Servicing Corp.*, 292 F.3d 49, 54 (1st Cir. 2002). Instead, the "natural reading" of the language of § 1635(b) "is that the security interest becomes void when the obligor exercises a right to rescind that is available in the particular case, either because the creditor acknowledges that the right of rescission is available, or because the appropriate decision maker has so

determined. . . .Until such decision is made, the [borrowers] have only advanced a claim seeking rescission." *Id.* at 55.

Relying on the above authority, I find in this case that Plaintiff's right to rescission is contested and Plaintiff has not yet shown that he has a right to rescission. Accordingly, the security interest in the Loan is not void and will not become so unless Plaintiff prevails on the merits of this issue.

IV. <u>CONCLUSION</u>

Based upon the foregoing, it is

ORDERED that the Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(B)(1), (2), (4), and (6) and Brief in Support Thereof (Doc. # 18) is **GRANTED IN PART AND DENIED IN PART** consistent with this Order. It is

FURTHER ORDERED that Plaintiff's Motion for Preliminary Injunction and Plaintiff's Amended Motion for Preliminary Injunction (Docs. # 10, 22) are **DENIED**.

Dated this 6th day of July, 2010.

BY THE COURT:

s/ Wiley Y. Daniel
WILEY Y. DANIEL,
CHIEF UNITED STATES DISTRICT JUDGE